

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IMOGENE MANNING | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03 C 5802 |
| | ) | Wayne R. Andersen |
| THE UNIVERSITY OF CHICAGO, | ) | District Judge |
| HOSPITALS, an Illinois not-for-profit | ) | |
| corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM, OPINION AND ORDER

Before the Court is the defendant's motion for summary judgment. For the reasons set forth below, the motion is granted.

## BACKGROUND

Plaintiff, Imogene Manning, was an employee of the defendant, University of Chicago Hospitals ("Hospital"), for over thirty years spanning from August 1971 until her discharge on April 9, 2003. (Local Rule 56.1(a) Statement of Facts "SOF" ¶¶ 16-17.) Beginning in 1996 until her discharge, Manning worked as an outpatient service representative, performing registration and patient inquiry functions for outpatient appointments. (*Id.* ¶ 7.)

On June 15, 2001, Manning took a medical leave of absence to undergo surgery and treatment for bladder cancer. (*Id.* ¶ 20.) On December 20, 2001, while on leave, Manning notified her supervisors in the Outpatient Services Department ("Department") that she would be able to return to work on January 7, 2002. (*Id.* ¶ 22.) When Manning presented herself for

1

reinstatement on January 7, 2002, she had completed cancer treatment, her cancer was in remission, and her physician had released her for work with no medical restrictions. (Resp. to SOF ¶ 23.) She admits her only limitations were some discomfort when sitting on bar-stool height chairs and difficulty walking long distances. (*Id.*)

On January 7, 2002, Manning met with human resources personnel, who requested that she take an assessment test to assist in identifying open and available positions throughout the Hospital for which she was qualified. (*Id.* ¶ 27.) Based on advice she received from her union representatives, Manning never took the assessment test, believing it was not required under the union's collective bargaining agreement. (*Id.* ¶¶ 27-28.)

After filing a grievance with her union, Manning was reinstated to her position on April 7, 2002. (*Id.* ¶ 29.) On May 15, 2002, she filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging the Hospital's actions in not reinstating her on January 7, 2002 constituted disability discrimination. (*Id.*)

In the months following the filing of her EEOC charge on May 15, 2002, Manning alleges she was subjected to less favorable treatment than her coworkers and was given less favorable job assignments. Accordingly, on October 7, 2002, she filed another charge with the EEOC alleging retaliation. She was issued a notice of her right to sue on May 23, 2003.

During the last several years of her tenure with the Hospital, Manning received negative performance evaluations. From 1996 through June 2001, the period before Manning went on medical leave, she received annual evaluations of her work performance. (*Id.* ¶ 18.) Manning admits she consistently received an overall rating of "1" or "2," which indicated she needed improvement. (*Id.*)

After she returned to work, her performance did not improve. Approximately nine months after her return, in January 2003, her department implemented a new method of auditing employees' work. The managers began reviewing employees' daily work logs and randomly selected approximately five accounts listed on the log. (*Id.* ¶ 35.) The managers then reviewed those patient accounts and completed a quality assurance audit report. (*Id.* ¶ 36.) New employees or those having performance issues were audited using the daily work log method. (SOF ¶ 37.)

Because Manning had performance problems and had been recently reinstated, department managers began reviewing her daily work log. The managers reported that for the period April 2002 through April 2003, she made errors on approximately sixty percent of the patient accounts she worked. (SOF ¶ 47.) Manning admits she received a counseling memorandum detailing her poor performance on June 17, 2002, followed by a written warning on August 26, 2002 and a three-day suspension starting October 9, 2002 for poor work performance. (Resp. to SOF ¶ 50.) On February 3, 2003, the Department issued a second three-day suspension for poor work performance and advised her that if her performance did not improve within 60 days, her employment would be terminated. (*Id.* ¶ 51.) Citing her poor work performance, the Hospital discharged Manning on April 9, 2003. (*Id.*)

On June 26, 2003, Manning filed a second charge of retaliation with the EEOC (her third EEOC charge) alleging that her discharge on April 9, 2003 was in retaliation for filing previous charges with the EEOC. On July 8, 2003, she was issued a notice of her right to sue in federal court.

On August 19, 2003, Manning filed a six-count complaint against the Hospital in this

3

Court. In Count I, she alleges a violation of the Americans with Disabilities Act ("ADA") for failure to reasonably accommodate. In Count III, she alleges the Hospital subjected her to less favorable treatment than similarly situated employees in retaliation for having filed an EEOC charge of discrimination on May 15, 2002. In Count V, she alleges the Hospital terminated her employment on April 9, 2003 in retaliation for having filed previous EEOC charges. In Counts II, IV, and VI, Manning also alleges violations of the Illinois Human Rights Act. On September 24, 2004, however, this Court granted plaintiff's own motion to voluntarily dismiss these state law claims. The Hospital now seeks summary judgment on the remaining Counts I, III, and V.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate in a situation where "the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c)*; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). The Court's function is "not to weigh the evidence but merely to determine if 'there is a genuine issue for trial.'" *Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760, 764 (7th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). A genuine issue of material fact exists only if a "fair-minded jury could return a verdict for the [non-moving party] on the evidence presented." *Anderson*, 477 U.S. at 252.

In assessing whether a genuine issue of material fact exists in a case, the Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *See id.* at 255. However, neither the mere existence of some alleged factual dispute between the parties, nor the existence of "some metaphysical

doubt as to the material facts," is sufficient to defeat a motion for summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## DISCUSSION

### A. Count I: Failure to Accommodate

In Count I, Manning claims the Hospital discriminated against her in violation of the ADA by delaying her return to work from January 7, 2002, the day she requested reinstatement, to April 7, 2002, the day of her discharge. The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA requires employers to provide "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship." 42 U.S.C. § 12112(b)(5)(A). To invoke protection under the ADA, a plaintiff must demonstrate that (1) she is a disabled person within the meaning of the ADA, (2) she is otherwise qualified to perform the essential functions of the job either with or without reasonable accommodation, and (3) she has suffered an adverse employment action because of her disability. *Dvorak v. Mostardi Platt Assoc., Inc.*, 289 F.3d 479, 483 (7th Cir. 2002); *Moore v. J.B. Hunt Transp., Inc.*, 221 F.3d 944, 950 (7th Cir. 2000).

The Hospital seeks summary judgment on the ground that Manning is not "disabled" as that term is defined under the ADA. The ADA defines "disability" as (a) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (b) a

5

record of such impairment; or (c) being regarded as having such an impairment. 42 U.S.C. § 12102(2); *see Roth v. Lutheran Gen. Hosp.*, 57 F.3d 1446, 1454 (7th Cir. 1995). The Court must interpret these terms "strictly to create a demanding standard for qualifying as disabled." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 197 (2002). It is clear that "[m]erely having an impairment does not make one disabled for purposes of the ADA." *Id.* at 195. In addition, a plaintiff must demonstrate that the impairment substantially limits one of her major life activities. *See* 42 U.S.C. § 12102(2)(A). "Substantially limited" means that "an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives. The impairment's impact must also be permanent or long term." *Toyota Motor Mfg.*, 534 U.S. at 197.

If Manning's condition does not rise to the level of a disability, then she cannot recover under the ADA even if the Hospital terminated her employment because of her condition. "The Act is not a general protection of medically afflicted persons . . . . If the employer discriminates against them on account of their being (or being believed by him to be) ill, even permanently ill, but not disabled, there is no violation." *Christian v. St. Anthony Med. Ctr., Inc.*, 117 F.3d 1051, 1053 (7th Cir. 1997) (citation omitted).

In this case, Manning's only alleged limitation upon her return to work on January 7, 2002 was her discomfort when sitting on bar-stool height chairs and difficulty walking long distances. (Resp. to SOF ¶ 23.) She admits she never made a formal request nor presented a medical opinion that an accommodation should be made related to these limitations. (*Id.* ¶ 24.) At the time she presented herself for reinstatement, she had completed cancer treatment, her cancer was in remission, and her physician had released her for work with no medical

restrictions. (*Id.* ¶¶ 22-23.) Manning's impairments cannot be said to be a "substantial impairment" preventing or restricting her ability to engage in activities that are of central importance to the daily lives of most people. *Toyota Motor Mfg.*, 534 U.S. at 197. "The central inquiry must be whether the claimant is unable to perform the variety of tasks central to most people's daily lives, not whether the claimant is unable to perform the tasks associated with her specific job." *Mack v. Great Dane Trailers*, 308 F.3d 776, 782 (7th Cir. 2002). Her discomfort when sitting on bar-stool height chairs and difficulty walking long distances are clearly not the sort of restrictions which constitute a substantial limitation on one's ability to perform one's job or any other major life activity. *See Contreras v. Suncast Corp.*, 237 F.3d 756, 763 (7th Cir. 2001) (holding that forty-five pound lifting restrictions, inability to engage in strenuous work or drive a forklift for more than four hours per day fail to "constitute a significant restriction on one's capacity to work, as the term is understood within the ADA.")

Because plaintiff's limitations cannot be said to substantially limit any of her major life activities, she does not have a disability as defined by the ADA. The Court need not address the other requirements of an ADA claim because without a disability Manning's claim must fail. For these reasons, the Court grants summary judgment on Count I.

**B.     Counts III and V: Retaliation under the ADA**

In Count III, Manning alleges that, after she filed an EEOC charge on May 15, 2002 for disability discrimination, the Hospital retaliated by subjecting her to less favorable treatment than similarly situated coworkers. (Compl. ¶ 17.) She alleges the Hospital carried out its retaliation by "constantly scrutinizing her actions and giv[ing] her disciplinary write-ups for conduct that was either not a proper subject for discipline or for which other similarly situated employees

7

were not given disciplinary write-ups." (*Id.* ¶ 18.) Manning reported this alleged retaliation in a charge she filed with the EEOC on October 7, 2002.

In Count V of the complaint, Manning alleges her discharge on April 9, 2003 was in retaliation for the filing of her charges with the EEOC on May 15 and October 7, 2002.

To establish a prima facie case of retaliation under the ADA, Manning must demonstrate that (1) she engaged in protected activity (e.g., filing an EEOC charge); (2) she suffered an adverse employment action; (3) she was meeting her employer's legitimate employment expectations; and (4) other similarly situated employees who did not engage in protected activity were treated more favorably. *Stone v. City of Indianapolis Public Utilities Div.*, 281 F.3d 640, 642 (7th Cir. 2002). If she can establish a prima facie case of retaliation, the Hospital may rebut her claim, under the *McDonnell-Douglas* analysis, by providing a non-invidious reason for its actions. *See Stone*, 281 F.3d at 643. If an employer provides a legitimate reason for its conduct, the burden shifts back to the employee to provide evidence that the employer's proffered reason is pretext. *Id.*

In this case, Manning cannot establish a prima case of retaliation for at least two reasons. First, she cannot demonstrate that she was meeting her employer's legitimate employment expectations. An inference of retaliatory motive is less warranted when the plaintiff is in performance trouble before she engages in protected activity. *Allen v. Chicago Transit Authority*, 317 F.3d 696, 701 (7th Cir. 2003) (finding plaintiff's retaliation claims "fatally undermined by uncontroverted evidence of infractions and discipline prior to his complaints . . . ."). Before Manning took her medical leave of absence, she admits she consistently received an overall rating of "1" or "2" on a one to five scale, one being the lowest rating available. (Resp. to SOF ¶

18.) In a 1999 performance evaluation, her supervisors noted that her performance was well below average and "[s]he rebuffs the idea that she needs training and even where she has received additional training, she still performs inadequately." (SOF, Ex. E.) In the same evaluation, which covered the period October 1998 to October 1999, her supervisors note:

> Imogene continually refuses to follow departmental procedure, for example, she eats at the greeters desk . . . does not answer the phone in a timely manner, does not relay important phone messages. . . . Her quality of work is inconsistent. She is moody and argumentative. Imogene is defensive with staff and management, temperamental, promotes unrest. Makes no effort to speak or make eye contact with persons approaching her workstation. . . . She can be impolite and/or abrupt with patients and coworkers. Her tone is abrasive, disinterested and disrespectful. . . . She fails to document pertinent information and refuses to be responsible for follow up.

(*Id.*, Pride In Performance Planning and Review Form dated 11/9/99, at 36.)

Manning received these and other below-average evaluations before she filed her first EEOC complaint on May 15, 2002.

When she returned to work in April 2002, managers in her department reviewed her daily work log and reported that for the period April 2002 through April 2003, she made errors on approximately sixty percent of the patient accounts she worked. (SOF ¶ 47.) She admits she received a written warning for poor performance on August 26, 2002, a three-day suspension for poor performance on October 9, 2002, and a second three-day suspension for poor work performance on February 3, 2003. (Resp. to SOF ¶¶ 50-51.) On February 3, 2003, the Department also advised her that if her performance did not improve within 60 days, her employment at the Hospital would be terminated. (*Id.* ¶ 51.) Manning admits that from these reviews she understood that her superiors were dissatisfied and her employment was in jeopardy. (SOF ¶ 18.) Citing her poor work performance, the Hospital discharged her on April 9, 2003. (*Id.* ¶ 51.)

Evaluations establishing Manning's poor work performance before the filing of her first EEOC charge support the Hospital's claim that it discharged her for this continued poor performance when she returned to work in April 2002 and not in retaliation for the filing of EEOC charges. A clear pattern of expressed dissatisfaction with the plaintiff over a period of several years precludes any possibility of her establishing that she was meeting the Hospital's legitimate expectations. Having carefully reviewed the briefs and other supporting documents, including Manning's performance evaluations included in the exhibits to the Defendant's Local Rule 56.1 Statement of Facts, it is clear she cannot establish at trial that she was meeting the Hospital's legitimate employment expectations.

Second, Manning cannot establish the fourth element of a prima facie retaliation claim, which requires that plaintiff prove other similarly situated employees who had not filed EEOC charges were treated more favorably. The Seventh Circuit has held "[w]hen a plaintiff claims that [she] was disciplined more harshly than a similarly situated employee based upon some prohibited reason, a plaintiff must show that [she] is similarly situated with regard to performance, qualifications and conduct." *Snipes v. Illinois Dep't of Corrections*, 291 F.3d 460, 463 (7th Cir. 2002). To do so, the plaintiff must demonstrate that she and the alleged comparable "engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id.*

In this case, Manning has presented no evidence that she was disciplined more harshly than other similarly situated employees who had not filed EEOC charges. In her opposition brief to defendant's summary judgment motion, she states only that she "was treated much more harshly via her discharge than were the other OSR employees who were not discharged from

their jobs." (Pl.'s Mem. Opp'n Summ. J at 12.) The Seventh Circuit has explained that such generalizations, without factual support in the record, are insufficient to defeat summary judgment. *See Albiero v. City of Kankakee,* 246 F.3d 927, 933 (7th Cir.2001); *Slowiak v. Land O'Lakes, Inc.,* 987 F.2d 1293, 1295 (7th Cir. 1993).

Moreover, the Hospital presents in its Local Rule 56.1 Statement of Material Facts an internal quality assurance report showing that Manning had an error rate six times the average in her department and more than three times greater than that of the next worst performing employee. (SOF ¶¶ 59-60.) According to the Hospital, this report demonstrates that Manning cannot be similarly situated to others in her department because, in terms of performance, Manning "was plainly in a league of her own and thus incapable of showing that similarly situated employees were treated better than she." (Mem. in Supp. of Summ. J at 11.)

Manning's response to this report is that she lacks knowledge sufficient to either admit or deny this claim. (Resp. to SOF ¶¶ 59-60.) Under Local Rule 56.1(b), all material facts set forth in the defendant's Statement of Material Facts are deemed admitted unless controverted by the statement of the opposing party. Here, because Manning does not controvert the Hospital's report, we conclude that its findings are accurate. We also agree with the Hospital's analysis that because a plaintiff must show she is similarly situated with regard to performance, Manning is unable to find a coworker with whom she is similarly situated because her performance was far worse than that of her colleagues. *See Snipes,* 291 F.3d at 463.

Because the primary purpose of summary judgment is to isolate and dispose of factually unsupported claims, Manning must set forth specific facts showing there is a genuine issue for trial. *See Fed. R. Civ. P. 56; Albiero,* 246 F.3d at 933. A party will be successful in opposing

summary judgment only when it presents definite, competent evidence to rebut the motion. *Albiero*, 246 F.3d at 933. Here, Manning has failed to present competent evidence either that she was meeting her employer's legitimate expectations, or that other similarly situated employees were treated more favorably. Accordingly, she has failed to establish a prima facie case of retaliation under the ADA.

Even assuming that Manning could establish a prima facie case of retaliation against the Hospital, the Hospital would be entitled to summary judgment because it has proffered a legitimate, non-discriminatory reason for terminating her employment. Manning's continued inadequate performance in a job requiring accuracy and efficiency and her receipt of a warning and two three-day suspensions in one year's time are undisputed. (SOF ¶¶ 50-52.)

Manning offers no credible evidence that the reason the Hospital gave for discharging her was not its real reason. Nothing in the timing or other aspects of the case suggest a retaliatory motive. She filed her initial charge of discrimination with the EEOC on May 15, 2002 and continued to work for eleven months thereafter. Such a gap between the protected act of filing an EEOC claim and the adverse employment action defeats a finding of retaliation. *Haywood v. Lucent Technologies, Inc.*, 323 F.3d 524, 532 (7th Cir. 2003). Manning also admits that no one from the Hospital ever made negative mention of her pending charges or otherwise indicated a dissatisfaction with her having filed them. (SOF ¶ 29.)

In addition, an inference of a retaliatory motive is even less warranted when the plaintiff was in serious performance trouble even before engaging in the protected activity. Here, Manning admits receiving negative performance reviews before she ever filed a charge or the circumstances leading to the charge had arisen. (SOF ¶ 18.) Plaintiff simply cannot meet her

12

burden of proffering any probative evidence showing that the reasons for her termination were a pretext for retaliation. *See Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 983-84 (7th Cir. 1999).

For these reasons, the Court grants defendant's motion for summary judgment on Counts III and V.

## CONCLUSION

For the foregoing reasons, we grant defendant's motion for summary judgment [# 19-1]. Accordingly, this case is terminated. This is a final and appealable order.

It is so ordered.

_Wayne R. Andersen_
Wayne R. Andersen
United States District Judge

Dated: _August 24, 2005_

13